# Exhibit C

employees, and will receive no compensation for their participation in Advisory Council activities. Members participating in Advisory Council meetings and events will be responsible for their travel, living and other personal expenses. Meetings will be held regularly and, to the extent practical, not less than twice annually, in Washington, DC, or other locations as feasible. Teleconference meetings may also be held as needed.

To be considered for membership, submit the following information by 5:00 p.m. EDT on July 22, 2016 to the email or mailing address listed in the **ADDRESSES** section:

1. Name and title of the individual requesting consideration.

2. A sponsor letter from the applicant on his or her company letterhead containing a brief statement of why the applicant should be considered for membership on the Advisory Council. This sponsor letter should also address the applicant's experience and leadership related to trade, investment, financing, development, or other commercial activities between the United States and Africa.

3. The applicant's personal resume and short bio (less than 300 words).

4. An affirmative statement that the applicant meets all eligibility criteria, including an affirmative statement that the applicant is not required to register as a foreign agent under the Foreign Agents Registration Act of 1938, as amended.

5. Information regarding the ownership and control of the company, including the stock holdings as appropriate, signifying compliance with the criteria set forth above.

6. The company's size, product or service line, and major markets in which the company operates.

7. A profile of the company's trade, investment, development, finance, partnership, or other commercial activities in or with African markets.

8. Brief statement describing how the applicant will contribute to the work of the Advisory Council based on his or her unique experience and perspective (not to exceed 100 words).

Dated: June 24, 2016.

**Tricia Van Orden,**
*Executive Secretary, President's Advisory Council on Doing Business in Africa.*
[FR Doc. 2016–15373 Filed 6–28–16; 8:45 am]
**BILLING CODE 3510–DR–P**

# DEPARTMENT OF COMMERCE

**International Trade Administration**

[A–570–028]

**Hydrofluorocarbon Blends and Components Thereof From the People's Republic of China: Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances**

**AGENCY:** Enforcement and Compliance, International Trade Administration, Department of Commerce.
**SUMMARY:** The Department of Commerce (the Department) determines that imports of hydrofluorocarbon blends and components thereof (HFCs) from the People's Republic of China (PRC) are being, or likely to be, sold in the United States at less than fair value (LTFV), as provided in section 735 of the Tariff Act of 1930, as amended (the Act). In addition, we determine that critical circumstances exist with respect to imports of the subject merchandise. The final weighted-average dumping margins for this investigation are listed in the ''Final Determination Margins'' section below. The period of investigation is October 1, 2014, through March 31, 2015.
**DATES:** *Effective Date:* June 29, 2016.
**FOR FURTHER INFORMATION CONTACT:**
Elizabeth Eastwood or Dennis McClure, AD/CVD Operations, Office II, Enforcement and Compliance, International Trade Administration, U.S. Department of Commerce, 14th Street and Constitution Avenue NW., Washington, DC 20230; telephone: (202) 482–3874 or (202) 482–5973.
**SUPPLEMENTARY INFORMATION:**

## Background

On February 1, 2016, the Department published the preliminary determination of sales at LTFV of HFCs from the PRC.[1] The following events occurred since the *Preliminary Determination* was issued.

In February and March 2016, the Department attempted to verify the sales and factors of production (FOP) information submitted by Huantai Dongyue International Trade Co., Ltd. and Shandong Dongyue Chemical Co., Ltd. (collectively, Dongyue), in accordance with section 782(i) of the Act. However, as discussed in more detail below in the the ''Verification'' section of this notice, we find that Dongyue's reported data, including its separate rate application, are unverifiable, and thus cannot serve as a reliable basis for reaching a determination in this investigation. As a result, we are considering Dongyue to be part of the PRC-wide entity.

In March 2016, we verified the sales and FOP information submitted by T.T. International Co., Ltd. (TTI), in accordance with section 782(i) of the Act.

We invited interested party comments on the preliminary determination in this investigation. In April 2016, the petitioners,[2] the two mandatory respondents (Dongyue and TTI), a U.S. manufacturer of HFCs (National Refrigerants, Inc.), and various companies claiming separate rates (Taizhou Qingsong Refrigerant New Material Co., Ltd.; Daikin America and Daikin Fluorochemicals (China) Co., Ltd. (Daikin); Weitron International Refrigeration Equipment (Kunshan) Co., Ltd. and Weitron, Inc. (Weitron); Zhejiang Sanmei Chemical Ind. Co., Ltd. (Zhejiang Sanmei Chemical Industry Co., Ltd.) (Sanmei); Zhejiang Quhua Fluor-Chemistry Co., Ltd. (Quhua); Zhejiang Quzhou Lianzhou Refrigerants Co., Ltd. (Lianzhou); Zhejiang Yonghe Refrigerant Co., Ltd. (Zhejiang Yonghe); Jinhua Yonghe Fluorochemical Co., Ltd. (Jinhua Yonghe); and Shandong Huaan New Material Co., Ltd. (Huaan)) submitted case and rebuttal briefs regarding issues unrelated to the scope of this investigation.

In May 2016, we issued memoranda analyzing certain comments received on the scope of this investigation,[3] and we invited comments related to this analysis. In this same month, the petitioners and various interested parties submitted case briefs, and the petitioners also submitted a rebuttal brief. On June 2, 2016, the Department held a public hearing.

---

[1] *See Hydrofluorocarbon Blends and Components Thereof From the People's Republic of China: Preliminary Determination of Sales at Less than Fair Value, Affirmative Preliminary Determination of Critical Circumstances, in Part, and Postponement of Final Determination,* 81 FR 5098 (February 1, 2016) and accompanying Decision Memorandum (*Preliminary Determination*).

[2] The petitioners in this case are The American HFC Coalition and its individual members and District Lodge 154 of the International Association of Machinists and Aerospace Workers.

[3] *See* the Memoranda to Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, from Melissa Skinner, Director, Office II, entitled''Antidumping Duty Investigation of Hydrofluorocarbon Blends and Components (HFCs) from the People's Republic of China (PRC): Analysis of Scope Comments Made by Refrigerant Solutions Limited''; and ''Antidumping Duty Investigation of Hydrofluorocarbon Blends and Components (HFCs) from the People's Republic of China (PRC): Analysis of Certain Scope Comments,'' dated May 3, 2016.

**Scope of the Investigation**

The scope of the investigation covers HFCs and single HFC components of those blends thereof, whether or not imported for blending. For a complete description of the scope of the investigation, see Appendix I.

**Analysis of Comments Received**

All issues raised in the case and rebuttal briefs by parties in this investigation are addressed in the Issues and Decision Memorandum.[4] A list of the issues raised is attached to this notice as Appendix II. The Issues and Decision Memorandum is a public document and is on file electronically via Enforcement and Compliance's Antidumping and Countervailing Duty Centralized Electronic Service System (ACCESS). ACCESS is available to registered users at *http://access.trade.gov* and it is available to all parties in the Central Records Unit, Room B8024 of the main Department of Commerce building. In addition, a complete version of the Issues and Decision Memorandum can be accessed directly at *http://enforcement.trade.gov/frn/index.html.* The signed and electronic versions of the Issues and Decision Memorandum are identical in content.

**Verification**

As provided in section 782(i) of the Act, in March 2016, we verified the sales and FOP information submitted by TTI for use in our final determination. We used standard verification procedures, including an examination of relevant accounting and production records, and original source documents provided by TTI.[5]

In addition, as provided in section 782(i) of the Act, in February and March 2016, we also attempted to verify the sales and FOP information submitted by Dongyue, using standard verification procedures.[6] However, as noted in the Dongyue Verification Report, the Department was unable to validate the accuracy of Dongyue's accounting system.[7] As a consequence, we find that Dongyue's reported data is unverifiable, and thus cannot serve as a reliable basis for reaching a determination in this investigation.[8] Furthermore, we find that Dongyue was unable to support its separate rates claim at verification. Specifically, because Dongyue was unable to establish the integrity of its accounting system at verification, and the information contained in a company's accounting system is integral to the proper evaluation of its seprate rates eligibility, we find that all of the information derived from it is unverifiable. As a result, we find Dongyue to be part of the PRC-wide entity. For further discussion, see the Issues and Decision Memorandum at Comment 14.

**Changes to the Margin Calculations Since the Preliminary Determination**

Based on the Department's analysis of the comments received and our findings at verification, we made certain changes to our margin calculations for TTI. For a discussion of these changes, see the Issues and Decision Memorandum.

**Combination Rates**

In the *Initiation Notice,*[9] the Department stated that it would calculate combination rates for respondents that are eligible for a separate rate in this investigation. *Policy Bulletin 05.1* describes this practice.[10]

**Final Affirmative Determination of Critical Circumstances, in Part**

For the *Preliminary Determination,* the Department found that critical circumstances exist with respect to imports of HFCs from the PRC produced or exported by TTI and the PRC-wide entity, and we found that critical circumstances did not exist with respect to imports of HFCs from Dongyue and the companies to which we granted a separate rate (hereafter, "separate rates companies").[11] We are not modifying our critical circumstances findings for TTI, the separate rates companies, and the PRC-wide entity for the final determination. However, as noted above, we find that Dongyue is not eligible for a separate rate in this investigation, and, thus, we are no longer making a separate critical circumstances finding with respect to this company. For further discussion, see the Issues and Decision Memorandum at Comment 7. Thus, pursuant to section 735(a)(3)(B) of the Act and 19 CFR 351.206(h)(1)–(2), we find that critical circumstances exist with respect to subject merchandise produced or exported by all respondents in this investigation except the separate rates companies.

**Separate Rates**

In the *Preliminary Determination,* we found that evidence provided by Huaan, Jinhua Yonghe, Zhejiang Yonghe, and Sanmei supported finding an absence of both *de jure* and *de facto* government control, and, therefore, we preliminarily granted a separate rate to each of these companies.[12] In addition, in the *Preliminary Determination,* we found that Daikin and Weitron are wholly foreign-owned and do not require the Department to conduct further analyses of the *de jure* and *de facto* criteria to determine whether Daikin or Weitron is independent from government control.[13] We received no information since the issuance of the *Preliminary Determination* that provides a basis for reconsidering these determinations. Therefore, for the final determination, we continue to find that Huaan, Jinhua Yonghe, Zhejiang Yonghe, and Sanmei, Daikin, and Weitron are eligible for separate rates.

With respect to Zhejiang Lantian Environmental Protection Fluoro Material Co., Ltd. (Lantian Fluoro), Lianzhou, Sinochem Lantian Trade Co., Ltd. (Sinochem Lantian), Quhua, and

---

[4] *See* Memorandum from Gary Taverman, Associate Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, to Ronald K. Lorentzen, Acting Assistant Secretary for Enforcement and Compliance, regarding "Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Hydrofluorocarbon Blends and Components Thereof from the People's Republic of China," dated concurrently with this notice (Issues and Decision Memorandum).

[5] *See* Memorandum to The File, from Dennis McClure and Manuel Rey, Analysts, AD/CVD Operations, Office II, entitled "Verification of the Responses of T.T. International Co., Ltd. in the Antidumping Duty Investigation of Hydrofluorocarbon Blends and Components Thereof from the People's Republic of China" dated April 6, 2016, and Memorandum to The File, from Dennis McClure and Manuel Rey, Analysts, AD/CVD Operations, Office II, entitled "Verification of the Responses of the Sinochem Environmental Protection Chemicals (Taicang) Co., Ltd. in the Antidumping Duty Investigation of Hydrofluorocarbon Blend and Components Thereof from the People's Republic of China," dated April 5, 2016.

[6] *See* Memorandum to the File from Manuel Rey, Analyst, AD/CVD Operations, Office II, entitled, "Verification of the Responses of Huantai Dongyue International Trade Co., Ltd. and Shandong Dongyue Chemical Co., Ltd. in the Antidumping Duty Investigation of Hydrofluorocarbon Blends and Components Thereof from the People's Republic of China," dated March 25, 2016 (Dongyue Verification Report).

[7] *See* Dongyue Verification Report, at 2.

[8] *See* sections 782(e)(2) and (3) of the Act.

[9] *See Hydrofluorocarbon Blends and Components Thereof From the People's Republic of China: Initiation of Less-Than-Fair-Value Investigation,* 80 FR 43387, 43391 (July 22, 2015).

[10] *See* Enforcement and Compliance's *Policy Bulletin No. 05.1,* regarding, "Separate-Rates Practice and Application of Combination Rates in Antidumping Investigations involving Non-Market Economy Countries," (April 5, 2005) (Policy Bulletin 05.1), available on the Department's Web site at *http://enforcement.trade.gov/policy/bull05-pdf.*

[11] *See Preliminary Determination,* and accompanying Preliminary Decision Memorandum at 23.

[12] *Id.,* and accompanying Preliminary Decision Memorandum at 20–23. We also assigned Dongyue and TTI separate rates. *See Preliminary Determination,* 81 FR at 5099. However, we now find that Dongyue is no longer eligible for a separate rate. *See* the Issues and Decision Memorandum at Comment 14.

[13] *Id.*

Sinochem Environmental Protection Chemicals (Taicang) Co. Ltd. (Taicang), however, we determined in the *Preliminary Determination* that these companies failed to demonstrate an absence of *de facto* government control, and, thus, the Department did not grant Lantian Fluoro, Lianzhou, Sinochem Lantian, Quhua, and Taicang separate rates. For this final determination, we continue to find, based on record evidence, that Lantian Fluoro, Lianzhou, Sinochem Lantian, Quhua, and Taicang failed to demonstrate an absence of *de facto* government control, and we are therefore not granting these companies separate rates. For further discussion of this issue, *see* the Issues and Decision Memorandum at Comment 8.

Under section 735(c)(5)(A) of the Act, the rate for all other companies that have not been individually examined is normally an amount equal to the weighted average of the estimated weighted-average dumping margins established for exporters and producers individually investigated, excluding any zero and *de minimis* margins, and any margins determined entirely on the basis of facts available. In this final determination, the Department has calculated a rate for TTI that is not zero, *de minimis,* or based entirely on facts available. Therefore, the Department has assigned to the companies that have not been individually examined, but have demonstrated their eligibility for a separate rate, a margin of 101.82 percent, which is the rate for TTI.

**PRC-Wide Rate**

In our *Preliminary Determination,* we found that the PRC-wide entity, which includes Lantian Trade, Taicang, Lantian Environmental, Quhua, and Lianzhou, and other PRC exporters and/or producers of the merchandise under consideration during the POI did not respond to the Department's quantity and value questionnaire. As a result, we preliminarily calculated the PRC-wide rate on the basis of adverse facts available (AFA).[14] For the final determination, we determined to use, as the AFA rate applied to the PRC-wide entity, 216.37 percent, the highest transaction-specific dumping margin calculated in the final determination. As we explained in the *Preliminary Determination,* we attempt to corroborate the highest margin contained in the Petition (*i.e.,* 300.30 percent) by comparing it to the highest calculated transaction-specific margin.[15] We determined that the highest transaction-specific margin demonstrates that the Petition rate of 300.30 percent does not have probative value. Therefore, we determined that we are unable to corroborate the 300.30 percent rate and, consequently, we used TTI's highest calculated transaction-specific margin as the PRC-wide rate.[16] For these same reasons, in the final determination, we continued to base the PRC-wide rate on TTI's highest transaction-specific margin, which is now 216.37 percent. Furthermore, there is no need to corroborate the selected margin because it is based on information submitted by TTI in the course of this investigation (*i.e.,* it is not secondary information).

**Final Determination Margins**

The Department determines that the final weighted-average dumping margins, and cash deposit rates are as follows:

| Exporter | Producer | Weighted-average margin (%) |
|---|---|---|
| T.T. International Co., Ltd.[17] | Sinochem Environmental Protection Chemicals (Taicang) Co., Ltd | 101.82 |
| T.T. International Co., Ltd. | Zhejiang Lantian Environmental Protection Fluoro Material Co. Ltd.* | 101.82 |
| T.T. International Co., Ltd | Jinhua Yonghe Fluorochemical Co., Ltd | 101.82 |
| T.T. International Co., Ltd | Zhejiang Sanmei Chemical Industry Co., Ltd | 101.82 |
| T.T. International Co., Ltd. | Shandong Huaan New Material Co., Ltd. | 101.82 |
| T.T. International Co., Ltd. | Zhejiang Zhonglan Refrigeration Technology Co., Ltd | 101.82 |
| T.T. International Co., Ltd. | Dongyang Weihua Refrigerants Co., Ltd. | 101.82 |
| Daikin Fluorochemicals (China) Co., Ltd | Daikin Fluorochemicals (China) Co., Ltd. | 101.82 |
| Daikin Fluorochemicals (China) Co., Ltd | Arkema Daikin Advanced Fluorochemicals (Changsu) Co., Ltd. (Arkema Daikin). ** | 101.82 |
| Jinhua Yonghe Fluorochemical Co., Ltd | Zhejiang Yonghe Refrigerant Co., Ltd | 101.82 |
| Shandong Huaan New Material Co., Ltd | Shandong Huaan New Material Co., Ltd | 101.82 |
| Weitron International Refrigeration Equipment (Kunshan) Co., Ltd. | Zhejiang Lantian Environmental Protection Fluoro Material Co., Ltd | 101.82 |
| Weitron International Refrigeration Equipment (Kunshan) Co., Ltd. | Sinochem Environmental Protection Chemicals (Taicang) Co., Ltd | 101.82 |
| Weitron International Refrigeration Equipment (Kunshan) Co., Ltd. | Zhejiang Quzhou Lianzhou Refrigerants Co., Ltd | 101.82 |
| Weitron International Refrigeration Equipment (Kunshan) Co., Ltd. | Zhejiang Sanmei Chemical Industry Co., Ltd | 101.82 |
| Zhejiang Yonghe Refrigerant Co., Ltd | Jinhua Yonghe Fluorochemical Co., Ltd | 101.82 |
| Zhejiang Sanmei Chemical Industry Co., Ltd. (Zhejiang Sanmei Chemical Industry Co., Ltd.). *** | Zhejiang Sanmei Chemical Industry Co., Ltd. (Zhejiang Sanmei Chemical Industry Co., Ltd.). *** | 101.82 |
| Zhejiang Sanmei Chemical Industry Co., Ltd. (Zhejiang Sanmei Chemical Industry Co., Ltd.). *** | Jiangsu Sanmei Chemicals Co., Ltd | 101.82 |
| PRC-Wide Entity [18] | | 216.37 |

*In the *Preliminary Determination,* we used an incorrect name for TTI's supplier Zhejiang Lantian Environmental Protection Fluoro Material Co. Ltd. (*i.e.,* Zhejiang Lantian Environmental Protection Flourine Materials Co. Ltd.). For further discussion, *see* the Issues and Decision Memorandum at Comment 12.

**In the *Preliminary Determination,* we failed to assign a combination rate to this producer/exporter combination for Daikin. For further discussion, *see* the Issues and Decision Memorandum at Comment 12.

***In the *Preliminary Determination,* we failed to include the name by which Sanmei is also known in Sanmei's producer/exporter combination rates. For further discussion, *see* the Issues and Decision Memorandum at Comment 12.

---

[14] *Id.,* at 25.
[15] In the *Preliminary Determination,* we compared the highest Petition margin to the transaction-specific margins for both Dongyue and TTI, finding TTI's to be the highest. *Id.* However, in the final determination, we used only the transaction-specific margins for TTI in our comparison because we find Dongyue to be part of the PRC-wide entity.
[16] *Id.,* at 27–28.

**Disclosure**

We intend to disclose to parties in this proceeding the calculations performed for this final determination within five days of the date of public announcement of our final determination, in accordance with 19 CFR 351.224(b).

**Continuation of Suspension of Liquidation**

In accordance with section 735(c)(1)(B) of the Act, the Department will instruct U.S. Customs and Border Protection (CBP) to continue to suspend liquidation of all appropriate entries of HFCs from the PRC for the companies receiving a separate rate which were entered, or withdrawn from warehouse, for consumption on or after February 1, 2016, the date of publication of the preliminary determination of this investigation in the **Federal Register**. For entries made by TTI and the PRC-wide entity, in accordance with section 735(c)(4)(B) of the Act, because we continue to find that critical circumstances exist, we will instruct CBP to continue to suspend liquidation of all appropriate entries of HFCs from the PRC which were entered, or withdrawn from warehouse, for consumption on or after November 3, 2015, which is 90 days prior to the date of publication of the preliminary determination of this investigation in the **Federal Register**. Finally, because we now find that Dongyue is part of the PRC-wide entity, we will also instruct CBP to suspend liquidation of all appropriate entries of HFCs from the PRC from Dongyue which were entered, or withdrawn from warehouse, for consumption on or after November 3, 2015, in accordance with section 735(c)(4)(B) of the Act.

Further, pursuant to section 735(c)(1)(B)(ii) of the Act, the Department will instruct CBP to require a cash deposit equal to the amount by which normal value exceeds U.S. price as follows: (1) For the exporter/producer combinations listed in the table above, the cash deposit rate will be equal to the dumping margin which the Department determined in this final determination; (2) for all combinations of PRC exporters/producers of merchandise under consideration which have not received their own separate rate above, the cash deposit rate will be equal to the dumping margin established for the PRC-wide entity; and (3) for all non-PRC exporters of merchandise under consideration which have not received their own separate rate above, the cash deposit rate will be equal to the cash deposit rate applicable to the PRC exporter/producer combination that supplied that non-PRC exporter. The suspension of liquidation instructions will remain in effect until further notice.

**International Trade Commission Notification**

In accordance with section 735(d) of the Act, we will notify the U.S. International Trade Commission (ITC) of our final determination. As our final determination is affirmative, in accordance with section 735(b)(2) of the Act, the ITC will determine within 45 days whether the domestic industry in the United States is materially injured, or threatened with material injury, by reason of imports or sales (or the likelihood of sales) for importation of the subject merchandise. If the ITC determines that such injury exists, the Department will issue an antidumping duty order directing CBP to assess, upon further instruction by the Department, antidumping duties on all imports of the subject merchandise entered, or withdrawn from warehouse, for consumption on or after the effective date of the suspension of liquidation.

**Return or Destruction of Proprietary Information**

This notice will serve as a reminder to parties subject to administrative protective order (APO) of their responsibility concerning the disposition of proprietary information disclosed under APO in accordance with 19 CFR 351.305(a)(3). Timely written notification of the destruction of APO materials or conversion to judicial protective order is hereby requested. Failure to comply with the regulations and the terms of an APO is a sanctionable violation.

We are issuing and publishing this determination and notice in accordance with sections 735(d) and 777(i) of the Act.

Dated: June 21, 2016.

**Ronald K. Lorentzen,**
*Acting Assistant Secretary for Enforcement and Compliance.*

**Appendix I—Scope of the Investigation**

The products subject to this investigation are HFCs and single HFC components of those blends thereof, whether or not imported for blending. HFC blends covered by the scope are R–404A, a zeotropic mixture consisting of 52 percent 1,1,1 Trifluoroethane, 44 percent Pentafluoroethane, and 4 percent 1,1,1,2-Tetrafluoroethane; R–407A, a zeotropic mixture of 20 percent Difluoromethane, 40 percent Pentafluoroethane, and 40 percent 1,1,1,2-Tetrafluoroethane; R–407C, a zeotropic mixture of 23 percent Difluoromethane, 25 percent Pentafluoroethane, and 52 percent 1,1,1,2-Tetrafluoroethane; R–410A, a zeotropic mixture of 50 percent Difluoromethane and 50 percent Pentafluoroethane; and R–507A, an azeotropic mixture of 50 percent Pentafluoroethane and 50 percent 1,1,1-Trifluoroethane also known as R–507. The foregoing percentages are nominal percentages by weight. Actual percentages of single component refrigerants by weight may vary by plus or minus two percent points from the nominal percentage identified above.[19]

The single component HFCs covered by the scope are R–32, R–125, and R–143a. R–32 or Difluoromethane has the chemical formula $CH_2F_2$, and is registered as CAS No. 75–10–5. It may also be known as HFC–32, FC–32, Freon-32, Methylene difluoride, Methylene fluoride, Carbon fluoride hydride, halocarbon R32, fluorocarbon R32, and UN 3252. R–125 or 1,1,1,2,2-Pentafluoroethane has the chemical formula $CF_3CHF_2$ and is registered as CAS No. 354–33–6. R–125 may also be known as R–125, HFC–125, Pentafluoroethane, Freon 125, and Fc-125, R–125. R–143a or 1,1,1-Trifluoroethane has the chemical formula $CF_3CH_3$ and is registered as CAS No. 420–46–2. R–143a may also be known as R–143a, HFC–143a, Methylfluoroform, 1,1,1-Trifluoroform, and UN2035.

Also included are semi-finished blends of Chinese HFC components. Except as described below, semi-finished blends are blends of two Chinese HFCs components (*i.e.,* R–32, R–125, and R–143a), as well as blends of any one of these components with Chinese R–134a, that are used to produce the subject HFC blends that have not been blended to the specific proportions required to meet the definition of one of the subject HFC blends described above (R–404A, R–407A, R–407C, R–410A, and R–507A).

This investigation includes any Chinese HFC components (*i.e.,* R–32, R–125, and R–

---

[17] In this investigation, the Department determined to treat T.T. International, Ltd. (Dalian) and T.T. International Ltd. (Hong Kong) as a single entity (*i.e.,* T.T. International Co., Ltd. or TTI) for purposes of this antidumping duty proceeding. *See* the memorandum to Melissa G. Skinner, Director, Office II, from Dennis McClure, International Trade Analyst, entitled, ''Antidumping Duty Investigation of Hydrofluorocarbons from the People's Republic of China: Affiliation and Single Entity Status,'' dated concurrently with this determination.

[18] This also includes Dongyue, Lantian Trade, Taicang, Lantian Environmental, Quhua, and Lianzhou.

[19] R–404A is sold under various trade names, including Forane® 404A, Genetron® 404A, Solkane® 404A, Klea® 404A, and Suva®404A. R–407A is sold under various trade names, including Forane® 407A, Solkane® 407A, Klea®407A, and Suva®407A. R–407C is sold under various trade names, including Forane® 407C, Genetron® 407C, Solkane® 407C, Klea® 407C and Suva® 407C. R–410A is sold under various trade names, including EcoFluor R410, Forane® 410A, Genetron® R410A and AZ–20, Solkane® 410A, Klea® 410A, Suva® 410A, and Puron®. R–507A is sold under various trade names, including Forane® 507, Solkane® 507, Klea®507, Genetron®AZ–50, and Suva®507. R–32 is sold under various trade names, including Solkane®32, Forane®32, and Klea®32. R–125 is sold under various trade names, including Solkane®125, Klea®125, Genetron®125, and Forane®125. R–143a is sold under various trade names, including Solkane®143a, Genetron®143a, and Forane®125.

143a), as well as Chinese R–134a,[20] that are blended in a third country to produce a subject HFC blend before being imported into the United States. Chinese R–134a is not subject to the scope of this investigation unless it is blended with another Chinese HFC component (*i.e.,* R–32, R–125, and R–143a) into a subject blend or semi-finished blend before being imported into the United States.

Any blend or semi-finished blend that includes an HFC component other than R–32, R–125, R–143a, or R–134a is excluded from the scope of this investigation. Furthermore, semi-finished blends do not include any blends containing both HFCs R–32 and R–143a. Single-component HFCs and semi-finished HFC blends are not excluded from the scope of this investigation when blended with HFCs from non-subject countries.

Excluded from this investigation are blends of refrigerant chemicals that include products other than HFCs, such as blends including chlorofluorocarbons (CFCs), hydrochlorofluorocarbons (HCFCs), hydrocarbons (HCs), or hydrofluoroolefins (HFOs).

Also excluded from this investigation are patented HFC blends, including, but not limited to, ISCEON® blends, including MO99™ (R–438A), MO79 (R–422A), MO59 (R–417A), MO49Plus™ (R–437A) and MO29™ (R–4 22D), Genetron® Performax™ LT (R–407F), Choice® R–421A, and Choice® R–421B.

HFC blends covered by the scope of this investigation are currently classified in the Harmonized Tariff Schedule of the United States (HTSUS) at subheadings 3824.78.0020 and 3824.78.0050. Single component HFCs are currently classified at subheadings 2903.39.2035 and 2903.39.2045, HTSUS.[21] Although the HTSUS subheadings and CAS registry numbers are provided for convenience and customs purposes, the written description of the scope is dispositive.

## Appendix II—List of Topics Discussed in the Issues and Decision Memorandum

I. Summary
II. Background
III. Scope of Investigation
IV. Scope Comments
V. Use of Adverse Facts Available
VI. Margin Calculations
VII. Discussion of Issues
  1. Number of Classes or Kinds of Merchandise
  2. Addition of the Word ''Refrigerants''
  3. Semi-Finished Blends
  4. Third Country Blending
  5. Patented Blends and Non-Named HFC Blends
  6. Voluntary Respondents
  7. Critical Circumstances
  8. Companies Owned by a State-Owned Enterprise
  9. Authority to Base the PRC-Wide Rate on AFA
  10. Rejection of Qingsong's Quantity and Value and Separate Rates Responses
  11. Rate Assigned to Separate Rates Companies
  12. Ministerial Errors in Certain Combination Rates
  13. Verification Failure for Dongyue
  14. The Margin Assigned to Dongyue
  15. Moot Arguments for Dongyue
  16. AFA for TTI
  17. Whether TTI or its Supplier is the Respondent
  18. Value Added Tax Paid by the Suppliers
  19. Selling Expenses Incurred by TT Hong Kong
  20. Freight Expenses Paid to a Non-Market Economy Provider
  21. Movement Expenses Paid by the Suppliers
  22. Zip Codes Used in the Differential Pricing Analysis
  23. Factors of Production (FOPs) Reported Based on the Accounting or Calendar Month
  24. FOPs for Catalyst
  25. Energy FOPs
  26. Granting a By-Product Offset for Hydrochloric Acid (HCL) and Hydrogen Fluoride
  27. Whether the By-Product Adjustment Should Be Based on Sales or Production Quantity
  28. Surrogate Value for HCL
  29. Surrogate Value for Anhydrous Hydrogen Fluoride
  30. Surrogate Financial Statements
  31. Margin Calculation Errors
VIII. Recommendation

[FR Doc. 2016–15298 Filed 6–28–16; 8:45 am]
**BILLING CODE 3510–DS–P**

---

## DEPARTMENT OF COMMERCE

### National Oceanic and Atmospheric Administration

**RIN 0648–XE702**

### Mid-Atlantic Fishery Management Council (MAFMC); Meeting

**AGENCY:** National Marine Fisheries Service (NMFS), National Oceanic and Atmospheric Administration (NOAA), Commerce.

**ACTION:** Notice of a public meeting.

**SUMMARY:** The Scientific and Statistical Committee (SSC) of the Mid-Atlantic Fishery Management Council (Council) will meet July 20, 2016, through July 21, 2016.

**DATES:** The meeting will begin at 10 a.m. on Wednesday July 20, 2016, and end at 12 p.m. on Thursday, July 21, 2016. For agenda details, see **SUPPLEMENTARY INFORMATION.**

**ADDRESSES:** The meeting will be held at the Royal Sonesta Harbor Court, 550 Light Street, Baltimore, MD 21202; telephone: 410–234–0550.

*Council address:* Mid-Atlantic Fishery Management Council, 800 N. State Street, Suite 201, Dover, DE 19901; telephone: (302) 674–2331 or on their Web site at *www.mafmc.org.*

**FOR FURTHER INFORMATION CONTACT:** Christopher M. Moore, Ph.D., Executive Director, Mid-Atlantic Fishery Management Council, telephone: (302) 526–5255.

**SUPPLEMENTARY INFORMATION:**

### Agenda

Agenda items to be discussed at the SSC meeting include: Review fishery performance report and multi-year ABC specifications for *summer flounder, scup, black sea bass* and *bluefish;* MAFMC risk policy and assignment of CVs for Mid-Atlantic assessments; and, if time permits, review and discuss the Council's EAFM Guidance Document.

### Special Accommodations

These meetings are physically accessible to people with disabilities. Requests for sign language interpretation or other auxiliary aids should be directed to M. Jan Saunders, (302) 526–5251, at least 5 days prior to the meeting date.

**Authority:** 16 U.S.C. 1801 *et seq.*

Dated: June 24, 2016.

**Tracey L. Thompson,**
*Acting Director, Office of Sustainable Fisheries, National Marine Fisheries Service.*

[FR Doc. 2016–15367 Filed 6–28–16; 8:45 am]
**BILLING CODE 3510–22–P**

---

## DEPARTMENT OF COMMERCE

### National Oceanic and Atmospheric Administration

**RIN 0648–XE498**

### Takes of Marine Mammals Incidental to Specified Activities; Taking Marine Mammals Incidental to the Installation of the Block Island Wind Farm Export and Inter-Array Cables

**AGENCY:** National Marine Fisheries Service (NMFS), National Oceanic and Atmospheric Administration (NOAA), Commerce.

**ACTION:** Notice; issuance of an incidental harassment authorization.

**SUMMARY:** In accordance with regulations implementing the Marine Mammal Protection Act (MMPA), notification is hereby given that NMFS has issued an Incidental Harassment Authorization (IHA) to Deepwater Wind Block Island, LLC (DWBI) to take marine

---

[20] However, if the *only* Chinese content of such a third country blend is the R–134a portion, then such a third country blend is excluded from the scope of this investigation.

[21] We note that HFC blends were classified at HTSUS subheading 3824.78.0000 and single component HFCs were classified at HTSUS subheading 2903.39.2030 in 2015.